United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DAVID WOODY,                    No C 05-5062 VRW (PR)

                Petitioner,
                                        ORDER DENYING PETITION FOR A
        v                               WRIT OF HABEAS CORPUS

JILL BROWN, Warden,

                Respondent.

_____/


        Before the court is petitioner Michael David Woody's
petition for a writ of habeas corpus under 28 USC § 2254.  For the
reasons that follow, the petition is denied.


                                 I

        On August 30, 2002, the Humboldt County district attorney
filed an information charging petitioner with two counts of
possession of heroin for sale, one count of transportation of heroin
and one count of possession of ammunition.  The information also
charged petitioner with three misdemeanors, including resisting
arrest, possession of a hypodermic needle and possession of less

United States District Court
For the Northern District of California

than 28.5 grams of marijuana, as well as a sentence enhancement for two prison priors.

On June 20, 2003, a jury in the Superior Court of the State of the California in and for the County of Humboldt found petitioner guilty of all charges except for one count of possession of heroin for sale. On July 25, 2003, the court sentenced petitioner to a total of seven years, eight months in prison for the felony convictions. The court imposed concurrent jail terms for the misdemeanors.

On July 25, 2003, petitioner filed a notice of appeal in the California court of appeal, challenging the misdemeanor convictions on the ground that the statute of limitations had expired. This single-issue appeal was successful, and on August 16, 2004, the court of appeal struck the misdemeanor convictions. See People v Woody, No A103381, 2004 Cal App Unpub LEXIS 7522 (Cal Ct App Aug 16, 2004). Having prevailed on his claim, petitioner did not seek further review in the California Supreme Court.

On May 10, 2004, petitioner filed a petition for a writ of habeas corpus in the California court of appeal. It was summarily denied on June 7, 2004.

On July 28, 2004, petitioner filed a petition for a writ of habeas corpus in the California Supreme Court. It was summarily denied on June 15, 2005.

On December 8, 2005, petitioner filed the instant petition under 28 USC § 2254. On March 24, 2006, this court found that petitioner's claims appeared cognizable under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be

**2**

granted.

Respondent filed an answer on September 27, 2006. Petitioner did not file a traverse.


II

The following facts are derived from the transcripts of the record on appeal.

On the morning of May 7, 2001, the Humboldt County Drug Task Force ("HCDTF"), a state-supervised drug enforcement unit, was conducting surveillance of Kathy Mosely's residence in Eureka when petitioner drove up to the house in a green Mercury.  Reporter's Transcript on Appeal ("RT") at 58-63 (Doc # 23, Resp't Ex B-1).

Eureka Police Department Sergeant Patrick O'Neill observed Mosely exit her house and get into the passenger seat of petitioner's car.  Petitioner drove a short distance and stopped in an alleyway where he and Mosely had a brief conversation. Petitioner then drove around the block and dropped off Mosely in front of her house.  RT 64.

After driving several blocks, petitioner picked up a man standing on the sidewalk.  Petitioner parked in an alleyway where he and the passenger had a short conversation.  Petitioner then drove around the block and dropped off the passenger.  RT 65.

O'Neill stated that from his experience in other drug cases, this series of short meetings was consistent with illegal drug activity, because drug exchanges will be brief and occur covertly, in alleyways outside of public view.  RT 65-66.

Petitioner pulled into a trailer park and when he exited

United States District Court
For the Northern District of California

a Eureka police officer conducted a traffic stop after seeing that petitioner wasn't wearing his seat belt.  Petitioner gave his address as 3306 Pine Street in Eureka.  After giving a warning, the officer let petitioner go.  RT 66.

By May 11, 2001, petitioner was one of the primary subjects of the investigation.  That afternoon, a team of HCDTF agents, including O'Neill, conducted a traffic stop as petitioner was leaving Mosely's residence.  RT 70-72.  The agents knew petitioner was on parole and subject to a search condition.  RT 199-200.

One of the agents turned on his siren and emergency lights, but petitioner did not pull over.  The agent pulled up next to petitioner and attempted to get his attention.  Eventually petitioner came to a stop.  RT 72-73.

As O'Neill approached, he saw petitioner reaching across the passenger side of the car.  O'Neill couldn't tell whether petitioner was trying to hide things, grab things or grab a weapon. O'Neill and another agent ordered petitioner to exit the car, but petitioner appeared to ignore them.  Fearing for his safety, O'Neill reached into the car and pulled petitioner out.  Petitioner did not attempt to punch O'Neill, but he did not exit the vehicle easily. Petitioner wouldn't stand still, so the officers placed him on the ground and handcuffed him.  RT 73-75.

At some point during the struggle, petitioner's car had shifted into gear and rolled across the street, hit a fence and came to rest.  RT 75.

A search of petitioner's person uncovered $1,471 in cash.

**4**

United States District Court

For the Northern District of California

A search of the car revealed a cellular phone and a black film canister containing a bundle wrapped in electrical tape.  After cutting into the bundle, O'Neill discovered several grams of heroin. RT 77-79.  The total weight of the heroin was 13.23 grams.  RT 91, 243.  Agents also found a scrap of paper which O'Neill described as a pay-and-owe sheet for keeping track of debts and drug sales.  RT 214.

Petitioner was advised of his <u>Miranda</u> rights.  Petitioner admitted that he was a regular heroin user.  RT 79-80.  When O'Neill told petitioner that he believed petitioner was a heroin addict who sold heroin in order to support his habit, petitioner admitted, "that's about right."  RT 83-84.

Petitioner denied having swallowed any heroin, but when he was taken to the holding cell at the Eureka Police Department, he began to cough and gag.  RT 84-86.  He then admitted that he had swallowed several grams of heroin that had been in the car.  RT 85-86.  Petitioner was taken to the hospital and treated.  RT 87.

On May 14, 2001, O'Neill and other HCDTF officers searched petitioner's residence at 3306 Pine Street.  They were let into the house by petitioner's brother, Christopher Woody.  In the common living room area of the house, there was a couch with two end tables.  RT 87-88.  Inside the right end table the officers found a small plastic Easter egg which contained three 6-gram bindles of heroin.  RT 88, 97, 244.

O'Neill believed that the heroin was intended for sale, partly because of petitioner's earlier statements and partly because of the large volume of drugs found.  RT 97, 117.  O'Neill similarly

believed that the drugs seized from petitioner's car were intended for sale, based on the quantity, the cell phone, and petitioner's comments.  RT 118.

In petitioner's bedroom the officers found a small amount of marijuana.  RT 89.  They searched a Levi's jacket on a hanger and found a Glock Model 27 magazine with ammunition.  The magazine contained four 40-caliber rounds.  Several hypodermic syringes were found in a brown paper bag.  RT 90.

Petitioner's parole was revoked, but he was not charged by the Humboldt County district attorney.  The district attorney did file forfeiture proceedings against him for the money recovered.  Petitioner was released on parole, but returned to prison on two subsequent parole revocations.  Clerk's Transcript on Appeal ("CT"), 107 (Resp't Ex A).

On July 23, 2002, HCDTF agents learned that petitioner was wanted on an outstanding parole violation warrant.  Petitioner was found in a room in Chin's Motel in Eureka, along with a man and a woman identified as Regina White and Michael Farnum.  RT 100-101.  A search of the room revealed a plastic Easter egg, similar to the one found in petitioner's home, hidden underneath the right pillow on the bed.  RT 101.  The egg contained sixteen "boogers," packages of heroin weighing a fifth of a gram each, wrapped in wax paper.  RT 80, 102, 127.  There was also a larger chunk wrapped in plastic which weighed 1.93 grams.  RT 102-105.  O'Neill stated that the totality of the circumstances indicated the drugs were packaged for sale and not for personal use, because the drugs were pre-measured in uniform amounts and individually wrapped.  RT 103, 115-116.  Also

United States District Court
For the Northern District of California

found inside the room was a digital scale, plastic wrapping, approximately 550 hypodermic syringes in a cardboard box, and a pager.  RT 106.  Regina White told O'Neill that the heroin was hers. RT 178.

A "215 card" was found in petitioner's wallet.  The card stated that petitioner was a caregiver for Robert Woody, who used medical marijuana.  RT 198, 201.

At all times during the search of petitioner, the officers knew that he was on parole and subject to warrantless and unannounced searches.  RT 199-200.

III

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 USC § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams v

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

<u>Taylor</u>, 529 US 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id at 409.

In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision.  <u>LaJoie v Thompson</u>, 217 F3d 663, 669 n7 (9th Cir 2000). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a federal habeas court should conduct an independent review of the record to determine whether the state court's decision was an unreasonable application of clearly established federal law.  See <u>Himes v Thompson</u>, 336 F3d 848, 853 (9th Cir 2003).

The only definitive source of clearly established federal law under 28 USC § 2254(d) is in the holdings (as opposed to the

8

United States District Court

For the Northern District of California

dicta) of the Supreme Court as of the time of the state court decision.  Id at 412; Clark v Murphy, 331 F3d 1062, 1069 (9th Cir 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  Id.

IV

Petitioner seeks habeas relief under 28 USC § 2254 based on four claims: (1) trial counsel was ineffective, (2) the trial court abused its discretion in failing to appoint counsel during petitioner's motion for substitution of counsel, (3) the lapse in time between petitioner's arrest and arraignment on the May, 2001 charges violated due process, and (4) petitioner's conviction was supported by insufficient evidence.

A

Petitioner's claims of ineffective assistance of counsel can be grouped into six general categories: (a) trial counsel failed to challenge the length of time between petitioner's arrest and arraignment; (b) trial counsel failed to challenge the legality of evidence seized from the 3306 Pine Street residence; (c) trial counsel failed to investigate the circumstances of petitioner's arrests and the searches conducted at 3306 Pine Street and Chin's Motel; (d) trial counsel failed to object to certain statements made by Officer O'Neill, as well as investigate O'Neill's complaint

**9**

United States District Court
For the Northern District of California

history; (e) trial counsel improperly admitted petitioner's prior convictions, and failed to challenge the misdemeanor charges; and (f) trial counsel failed to declare an irrevocable conflict with petitioner.

The California Supreme Court summarily rejected each of petitioner's ineffective assistance of counsel claims.  A review of the record shows that the court's denials were not an objectively unreasonable application of clearly established federal law.  See 28 USC § 2254(d); Himes, 336 F3d at 853.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel.  Strickland v Washington, 466 US 668, 686 (1984).

In order to prevail on an ineffective assistance of counsel claim, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i e, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  Id at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient performance, i e, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id at 694.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome.  Id.

1

Petitioner claims that his trial counsel was ineffective for not moving to dismiss the charges related to his May 11, 2001

10

United States District Court

For the Northern District of California

arrest on the grounds that the delay in prosecution violated state statutory law, and that trial counsel's error was compounded by his failure to allege prejudice in connection with that claim. Petitioner further claims that his trial counsel should have moved to dismiss the May 2001 charges because the district attorney impliedly promised that petitioner would never be prosecuted for them.

Petitioner's arrest and the search of his car on May 11, 2001 uncovered several bindles of heroin, a pay-and-owe sheet and a large quantity of cash.  The search of 3306 Pine Street on May 14, 2001 uncovered an ammunition clip, more bindles of heroin, several hypodermic needles and some marijuana.  Petitioner's parole was revoked, but he was never arraigned on charges in connection with the May 2001 incidents until his arrest on July 23, 2002, at which point all the charges were consolidated.

In a written pre-trial memorandum, petitioner's trial counsel moved to dismiss all charges stemming from the May 2001 traffic stop and arrest on the theory that the 14-month delay between arrest and arraignment violated petitioner's right to a speedy trial under the California and United States constitutions. CT 106.  The trial court denied the motion, finding that there were no speedy trial violations, and that any delay in prosecution was harmless.  RT 11-12.

Petitioner now claims that the motion to dismiss would have been granted if trial counsel had argued that the 14-month delay violated California Penal Code § 825.  This claim is without merit.

11

United States District Court
For the Northern District of California

In order to show that defense counsel's failure to file a motion resulted in prejudice under Strickland, petitioner must show that (1) had his counsel made the motion, it is reasonable that the trial court would have granted it as meritorious; and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him. Wilson v Henry, 185 F3d 986, 990 (9th Cir 1999).

A lawyer need not file a motion that he knows to be meritless on the facts and the law. Put simply, trial counsel cannot have been ineffective for failing to raise a meritless motion. Juan H v Allen, 408 F3d 1262, 1273 (9th Cir 2005); Rupe v Wood, 93 F3d 1434, 1445 (9th Cir 1996).

Contrary to petitioner's claim, California Penal Code § 825 is inapplicable to petitioner's arrest and arraignment. Section 825 generally requires that defendants subject to arrest by warrant be brought before a magistrate within 48 hours. People v Hughes, 27 Cal 4th 287, 326 (2002). Following the May 11, 2001 traffic stop, petitioner was not arrested by warrant but placed in custody for suspected parole violations. Under California law, the arraignment requirement of § 825 does not apply when a parole hold has been placed on a defendant for a suspected parole violation. See Hughes, 27 Cal 4th at 326 (citing Ng v Superior Court, 4 Cal 4th 29, 38 (1992)) (parole hold does not trigger § 825 arraignment requirement). Because the delay in prosecution did not violate § 825, it is not reasonable that the trial court would have found any motion to dismiss raising that issue to be meritorious. Trial counsel's failure to raise the § 825 claim did not prejudice

**United States District Court**
For the Northern District of California

1    petitioner. See <u>Strickland</u>, 466 US at 693, <u>Wilson</u>, 185 F3d at 990.

2    Similarly, it cannot be said that petitioner's trial

3    counsel rendered ineffective assistance by failing to present

4    additional evidence of prejudice in support of a § 825 claim.

5    Petitioner argues that if the prosecution had arraigned him

6    immediately after the May 11, 2001 arrest, evidence collected during

7    the May 14, 2001 search of 3306 Pine Street, as well as the

8    incriminating statements petitioner made to investigators while

9    awaiting his parole revocation, would never have been admitted.  But

10   petitioner cannot establish prejudice because any statutory

11   challenge to the delay in prosecution would have been denied as

12   meritless.  Petitioner has not shown that there is a reasonable

13   probability that any additional argument on the statutory delay

14   would have resulted in a successful motion.  See <u>Wilson</u>, 185 F3d at

15   990.  This claim of ineffective assistance of counsel must fail.

16   Petitioner next claims that, by not pursuing criminal

17   charges immediately after petitioner's May 2001 arrest and instead

18   allowing the parole revocation process to run its course, the

19   district attorney indirectly promised that petitioner would never

20   face charges in connection with the May 2001 arrest.  Petitioner

21   argues that this promise was breached when the district attorney

22   filed an information consolidating the May 2001 charges with new

23   charges for which petitioner was ultimately acquitted.

24   In its motion to dismiss, petitioner's trial counsel argued

25   that petitioner was misled into thinking that the May 2001 charges

26   were resolved because the district attorney did not pursue those

27   charges during petitioner's parole revocation process.  The

28

13

United States District Court

For the Northern District of California

prosecution denied that it had ever made such a promise, but suggested that it had held off bringing criminal charges because petitioner had provided information to authorities about drug trafficking in Humboldt County.  For his cooperation, petitioner was given an opportunity to "cease his criminal activity."  CT 115.  By re-offending, petitioner demonstrated that he did not deserve the prosecutor's largesse.

Had there been a formal agreement between petitioner and the district attorney immunizing petitioner from prosecution, trial counsel might be faulted for failing to file a motion to dismiss on that basis.  But petitioner does not provide any evidence of such an agreement.  The record suggests that the district attorney simply chose to refrain from prosecuting petitioner in connection with the May 2001 arrest, but then changed course after petitioner re-offended.  Petitioner's conclusory allegations to the contrary do not support a finding that trial counsel's performance on this issue was deficient and prejudicial.  See Jones v Gomez, 66 F3d 199, 205 (9th Cir 1995) (conclusory claim of ineffective assistance of counsel not basis for federal habeas relief).

Nor was trial counsel ineffective for not moving to dismiss the May 2001 charges after the jury acquitted him of the July 2002 charges, on the theory that the older charges would never have been filed without the newer charges.  Although the district attorney's decision to pursue the May 2001 charges was perhaps precipitated by petitioner's later conduct, the prosecution was entitled to pursue the May 2001 charges at any point before the statute of limitations expired.  Petitioner's acquittal on the more

14

recent charges does not affect his convictions on the earlier charges. Petitioner's argument to the contrary is speculative and unsupported by the record. See Rios v Rocha, 299 F3d 796, 813 n23 (9th Cir 2002) (rejecting two ineffective assistance of counsel claims based on petitioner's failure to produce evidence of prejudice); Gomez, 66 F3d at 205 (rejecting conclusory claim of ineffective assistance of counsel). Trial counsel's failure to present a motion to dismiss cannot be said to have resulted in prejudice under Strickland.

In sum, petitioner has not established that his trial counsel's representation on the delay in prosecution was deficient or prejudicial under Strickland. The California Supreme Court's rejection of petitioner's claims was not an objectively unreasonable application of Strickland. See 28 USC § 2254(d).

2

Petitioner's next set of ineffective assistance of counsel claims relate to the evidence seized from 3306 Pine Street. He claims that trial counsel should have moved to suppress this evidence because the officers did not have authorization to search his house. He further claims that trial counsel failed to challenge the sufficiency of the evidence seized. The claims are meritless.

The search of 3306 Pine Street revealed three bindles of heroin, an ammunition clip, several hypodermic needles and some marijuana. Petitioner's trial counsel filed a motion seeking to suppress this and other evidence, arguing that the officers did not have a search warrant and that they were not properly granted

15

**United States District Court**
For the Northern District of California

1    permission to enter the house by either petitioner or his parole

2    officer.  CT 73-83.  The motion was later withdrawn.  CT 101.

3         The decision to withdraw the motion did not constitute

4    ineffective assistance.  At the time of the traffic stop and during

5    the search of his house, petitioner was on parole, and this fact was

6    known by the HCDTF officers.  A suspicionless search of a parolee

7    conducted under the authority of the California statute which

8    authorizes such searches does not violate the Fourth Amendment.  See

9    <u>Samson v California</u> 126 S Ct 2193, 2202 (2006); see also <u>People v</u>

10   <u>Reyes</u>, 19 Cal 4th 743, 750-754 (Cal 1998) (suspicionless searches

11   conducted pursuant to parole search condition not unreasonable under

12   4th Amendment).  All California parolees are informed that "you and

13   your residence and any property under your control may be searched

14   without a warrant at any time by any agent of the Department of

15   Corrections or any law enforcement officer."  Cal Code Regs, tit 15

16   §§ 2511(b)(4), 3901.9.2(b)(4).

17        Because the search of petitioner's home while he was on

18   parole was not unreasonable under the Fourth Amendment, the officers

19   did not need to receive permission from petitioner's brother to

20   enter.  If trial counsel had submitted the motion to suppress, it is

21   not reasonable that the trial court would have granted the motion as

22   meritorious.  See <u>Wilson</u>, 185 F3d at 990; see also <u>Anderson v</u>

23   <u>Alameida</u>, 397 F3d 1175, 1180-81 (9th Cir 2005) (counsel not

24   ineffective for failing to move to suppress confession for <u>Massiah</u>

25   violation when motion would have been without merit).  Petitioner's

26   claim fails.

27        Petitioner next claims that trial counsel failed to

28

1   investigate the possibility that the heroin belonged to third

2   parties.   Petitioner speculates that this would have been a

3   meritorious defense.

4        A defense attorney has a general duty to make reasonable

5   investigations or to make a reasonable decision that makes

6   particular investigations unnecessary.  See <u>Strickland</u>, 466 US at

7   691, <u>Turner v Duncan</u>, 158 F3d 499, 456 (9th Cir 1998).  <u>Strickland</u>

8   directs that "'a particular decision not to investigate must be

9   directly assessed for reasonableness in all the circumstances,

10  applying a heavy measure of deference to counsel's judgments.'"

11  <u>Silva v Woodford</u>, 279 F3d 825, 836 (9th Cir 2002) (quoting

12  <u>Strickland</u>, 466 US at 491).

13       Petitioner's claim fails because he does not show either

14  that trial counsel actually failed to investigate this defense, or

15  that a failure to investigate resulted in prejudice.

16       During his closing remarks, trial counsel explicitly

17  raised the possibility that the heroin found at 3306 Pine Street

18  belonged to members of petitioner's family.  RT 383.  Petitioner's

19  claim that trial counsel failed to investigate a third-party defense

20  is not supported by the record.

21       Importantly, petitioner does not show that trial counsel's

22  failure to investigate a third-party defense prejudiced him.

23  Petitioner provides no evidentiary support whatsoever for his claim

24  that the heroin belonged to someone else.  He simply states that it

25  must have belonged to someone else and ignores the fact that the

26  quantity and quality of the heroin seized from his home matched the

27  heroin seized from his car and stomach.  Petitioner has not shown

28

**United States District Court**

For the Northern District of California

1  that there is a reasonable probability that the verdict would have

2  been different.  See Strickland, 466 US at 694.

3      In sum, petitioner has not established that trial

4  counsel's representation on the legality of the evidence seized from

5  3306 Pine Street fell below an objective standard of reasonableness,

6  or that trial counsel's failings were prejudicial.  Strickland, 466

7  US at 688.  The California Supreme Court's rejection of these claims

8  was not an objectively unreasonable application of Strickland.  See

9  28 USC § 2254(d).

10

11                              3

12      Petitioner claims that trial counsel failed to investigate

13  and interview various witnesses regarding his arrest on May 11,

14  2001.  He also claims that trial counsel failed to obtain witnesses

15  who would have testified about the circumstances of the searches

16  conducted at 3306 Pine Street and Chin's Motel.  These claims are

17  wholly without merit.

18      The duty to investigate and prepare a defense does not

19  require that every conceivable witness be interviewed.  Hendricks v

20  Calderon, 70 F3d 1032, 1040 (9th Cir 1995).  A defendant's mere

21  speculation that a witness might have given helpful information if

22  interviewed is not enough to establish ineffective assistance.  See

23  Bragg v Galaza, 242 F3d 1082, 1087 (9th Cir), amended, 253 F3d 1150

24  (9th Cir 2001).

25      To establish prejudice caused by the failure to call a

26  witness, a petitioner must show that the witness was likely to have

27  been available to testify, that the witness would have given the

28

proffered testimony and that the witnesses' testimony created a
reasonable probability that the jury would have reached a verdict
more favorable to the petitioner.  Alcala v Woodford, 334 F3d 862,
872-73 (9th Cir 2003).

Petitioner claims that certain unnamed witnesses would
have testified that Kathy Mosely and another woman, Heather Randall,
were informants for HCDTF, and that these women "set up"
petitioner's arrest as well as other drug-related arrests in Eureka.

Petitioner does not provide any identifying information
about these additional witnesses, or explain why they would have
testified on his behalf.  Conclusory statements do not establish
ineffective assistance of counsel.  Petitioner must tender
affidavits from the witnesses counsel neglected to interview or
call, showing the "helpful testimony for the defense" they could
have presented.  Dows v Wood, 211 F3d 480, 486 (9th Cir 2000); Bragg
v Galaza, 242 F3d 1082, 1088 (9th Cir 2001).  Petitioner's
assertions are purely speculative, and will not do.  See id.

Petitioner also claims that his trial counsel failed to
investigate and interview witnesses who he claims used drugs in his
home.  Petitioner attaches affidavits from two such witnesses,
Ernest Hardin and Robert Danford.

Trial counsel's failure to secure these witnesses cannot
be deemed prejudicial.  Given their status as drug users, it was
likely not in petitioner's best interest to have them testify on his
behalf.  Their testimony would have raised the inference that they
were clients of petitioner or co-conspirators, or both.  Trial
counsel's theory was that petitioner was a low-level drug user and

19

not a supplier.  Depicting his home as a den of drug use would have conflicted with defense strategy.

Moreover, neither Hardin nor Danford would have testified that they actually left drugs behind in petitioner's home, only that it was possible.  Given their prior drug-related arrests, they likely would have declined to testify on Fifth Amendment grounds. Even if they had been available to testify, their proffered testimony would not have created a reasonable probability that the jury would have reached a verdict more favorable to petitioner. Alcala, 334 F3d at 872-73; United States v Berry, 814 F2d 1406, 1409 (9th Cir 1987) (no prejudice where appellant offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing).

Petitioner also alleges that trial counsel failed to obtain the testimony of his brother, Chris Woody, who he claims would have testified that he did not have authority to allow officers into the home.  According to petitioner, his brother also would have contradicted Officer O'Neill's testimony that no gun was recovered from petitioner's home.

Petitioner again fails to provide any affidavits providing factual support for this alleged testimony.  Moreover, the failure of trial counsel to secure petitioner's brother as a witness was not prejudicial.  Petitioner's parole status meant that the officers did not need his brother's permission to enter the house, and any testimony on this issue was irrelevant.  The value of any testimony about a gun being seized from petitioner's home would have been heavily outweighed by the harm of exposing petitioner to felony

**United States District Court**
For the Northern District of California

prosecution for possession of a gun by an ex-felon.  See Cal Penal Code § 12021.  Any potential testimony from petitioner's brother would not have created a reasonable probability that the jury would have reached a verdict more favorable to petitioner.  Petitioner has not established prejudice under <u>Strickland</u>.  See <u>Alcala</u>, 334 F3d at 872-73.

Finally, petitioner claims that his trial counsel failed to interview Regina White and Michael Farnum, who were present during the search of the room at Chin's Motel.  Petitioner argues they would have undermined Officer O'Neill's testimony that petitioner was the one who opened the door.

The fact that petitioner was acquitted of all charges in connection with the search of Chin's Motel means that any failure by trial counsel to call these witnesses could not have been prejudicial.  Their potential testimony, while slightly inconsistent with Officer O'Neill's testimony, would not have undermined the overwhelming evidence regarding the charges for which petitioner was convicted.  Petitioner once again has not established prejudice under <u>Strickland</u>.  See <u>Alcala</u>, 334 F3d at 872-73.

Petitioner's claims regarding trial counsel's failure to secure potential witnesses do not establish that trial counsel was ineffective.  The California Supreme Court reasonably applied the <u>Strickland</u> standard in summarily rejecting these claims.  See 28 USC § 2254(d).

**4**

Petitioner raises several ineffective assistance of

counsel claims regarding Officer O'Neill's testimony.  Petitioner claims that trial counsel failed to object to O'Neill's testimony on the ground that O'Neill perjured himself when he denied seizing a gun from petitioner's home.  Petitioner also claims that trial counsel failed to conduct an adequate investigation into the employment and citizen complaints filed against Officer O'Neill and that he should have objected to certain admissions petitioner made to Officer O'Neill.  These claims are without merit.

Petitioner provides a copy of an inventory record indicating that Officer O'Neill recovered a gun from petitioner's home.  As previously noted, trial counsel's failure to point out falsehoods in Officer O'Neill's testimony regarding the gun was not prejudicial because any value in impeaching O'Neill was outweighed by the serious risk that petitioner would be subject to prosecution for illegal possession of a firearm.  Petitioner has not established that trial counsel's failure to object to this element of O'Neill's testimony had any material impact on the outcome of his trial.  See Strickland, 466 US at 694.  Indeed, O'Neill's misstatement likely saved petitioner from being charged with an additional offense.

With regard to petitioner's other allegations about Officer O'Neill's employment and civilian complaint history, these assertions are too vague and unsupported by specific facts to satisfy petitioner's burden of establishing deficient performance and prejudice under Strickland.  See Gomez, 66 F3d at 204 (conclusory allegations that prosecution failed to disclose arrest history of witness do not warrant habeas relief).

Petitioner next claims that trial counsel should have

22

United States District Court

For the Northern District of California

1  objected to certain admissions, but he does not offer any legal

2  justification why these statements should have been excluded.

3  Petitioner asserts that his admission to Officer O'Neill that he was

4  a drug dealer was said in a sarcastic tone and that his admission to

5  selling heroin to support his habit was made in the past tense.  But

6  petitioner does not dispute that he made these statements and any

7  question over his sincerity in making them was not a proper basis

8  for an objection.

9      Petitioner also claims that many of his statements to the

10  police should have been excluded as having been extracted during his

11  "illegal detention" following his arrest on May 11, 2001.  This

12  court has concluded that there is no legal basis for challenging the

13  delay in petitioner's arraignment; consequently, there was no valid

14  reason for challenging any of petitioner's statements during this

15  delay as having been illegally obtained.

16      In sum, the various evidentiary challenges petitioner

17  alleges his trial counsel should have made are exceedingly minor and

18  would have done nothing to mitigate the overwhelming evidence

19  supporting petitioner's convictions.  This was not a case that

20  hinged on Officer O'Neill's credibility, given the quantity of drugs

21  and other paraphernalia seized from petitioner's car, home and

22  stomach.  Petitioner has not established prejudice under Strickland.

23  See United States v Gibson, 690 F2d 697, 703-04 (9th Cir 1982)

24  (failure to make evidentiary objections does not render assistance

25  ineffective unless challenged errors can be shown to have prejudiced

26  the defense).  The California Supreme Court did not unreasonably

27  apply Strickland when it summarily denied petitioner's ineffective

28

1   assistance of counsel claims on these issues.  See 28 USC § 2254(d).

2

3                                      5

4        Petitioner claims that trial counsel rendered ineffective

5   assistance when he admitted petitioner's prior convictions.  He also

6   claims that counsel should have objected to the misdemeanor offenses

7   for exceeding the statute of limitations.  Neither claim justifies

8   habeas relief.

9        Petitioner's ex-felon status was a necessary element of

10  one of the offenses for which he was charged, possession of live

11  ammunition by a felon.  Trial counsel's decision to admit the prior

12  convictions was a legitimate strategic choice that prevented the

13  jury from being exposed to petitioner's lengthy criminal record, as

14  well as the facts underlying those convictions.  See Strickland, 466

15  US at 689.  Moreover, it cannot be said, in light of the evidence as

16  a whole, that there is a reasonable probability that the jury would

17  have reached a verdict more favorable to petitioner if the prior

18  convictions had not been admitted.  See id at 694.

19       As for the misdemeanor offenses, petitioner's convictions

20  for resisting arrest, possession of a hypodermic needle and

21  possession of less than 28.5 grams of marijuana were stricken on

22  appeal as having exceeded the statute of limitations.  It matters

23  not, for purposes of habeas relief, that trial counsel failed to

24  raise the statute of limitations before appellate counsel.  The

25  misdemeanor charges have already been stricken on appeal.

26  Petitioner's habeas claim as to them is moot.  Strickland, 466 US at

27  695.

28

                                      24

United States District Court

For the Northern District of California

1    Petitioner is not entitled to federal habeas relief on his

2 claims of ineffective assistance of counsel with regards to the

3 prior convictions and the misdemeanor charges.  The California

4 Supreme Court's rejection of petitioner's claims was not an

5 objectively unreasonable application of <u>Strickland</u>.  See 28 USC §

6 2254(d).

7

8                                  6

9    Finally, petitioner asserts that his trial counsel was

10 ineffective for not declaring an irrevocable conflict during the

11 hearing on petitioner's motion for a substitution of counsel.

12 Petitioner contends that his relationship with trial counsel had

13 deteriorated to the point where counsel's representation was

14 "perfunctory at best."  Petitioner's claim does not warrant habeas

15 relief.

16    Petitioner made a motion under <u>People v Marsden</u>, 2 Cal 3d

17 118 (1970), for a substitution of counsel.  That motion was heard

18 and denied on June 16, 2003.  CT 167.  Petitioner argues that this

19 ruling was in error, and that trial counsel had an obligation to

20 assist petitioner in arguing that there was an irrevocable conflict

21 between them.

22    Petitioner's allegation that there was a complete

23 breakdown in communication with his trial counsel is wholly

24 unsupported by the record.  Petitioner and his trial counsel

25 conferred on a number of occasions during the trial as well as

26 during sentencing.  RT 126, 167, 434, 480, 497.  Petitioner provides

27 no specific facts that support his allegation that he and trial

28

                                 25

United States District Court

For the Northern District of California

counsel were embroiled in a conflict so severe as to deprive petitioner of any counsel whatsoever.  See <u>Daniels v Woodford</u>, 428 F3d 1181, 1197 (9th Cir 2005).  The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel.  <u>Morris v Slappy</u>, 461 US 1, 14 (1983).

Trial counsel was under no obligation to acquiesce to petitioner's demands for substitute counsel.  Nothing in the record suggests that counsel's performance was "perfunctory."  Counsel in fact managed to have petitioner acquitted on the charge of possession of heroin for sale in connection with his arrest at Chin's Motel.  Petitioner's claims to the contrary are conclusory and factually unsupported.

Petitioner is not entitled to federal habeas relief on this claim of ineffective assistance of counsel.  The California Supreme Court's denial of the claim was not an objectively unreasonable application of <u>Strickland</u>.  See 28 USC § 2254(d).


B

Petitioner argues that the trial court improperly denied his <u>Marsden</u> motion for substitution of counsel and that he should have been appointed separate counsel to represent him during that motion.  These claims do not warrant federal habeas relief.

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas.  <u>Bland v California Dep't of</u>

United States District Court
For the Northern District of California

Corrections, 20 F3d 1469, 1475 (9th Cir 1994), overruled on other grounds by Schell v Witek, 218 F3d 1017 (9th Cir 2000) (en banc). When a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction.  Id at 1475-1476; Hudson v Rushen, 686 F2d 826, 829 (9th Cir 1982).  The inquiry need only be as comprehensive as the circumstances reasonably would permit, however.  King v Rowland, 977 F2d 1354, 1357 (9th Cir 1992) (record may demonstrate that extensive inquiry was not necessary).

If a state court denies a motion for substitute counsel, the ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated.  Schell, 218 F3d at 1024-1025.  The question is whether the conflict between petitioner and his attorney was so great that it resulted in a total lack of communication or other significant impediment that effectively deprived petitioner of the attorney-client relationship required by the Sixth Amendment.  Id at 1026.

As previously noted, petitioner made a motion for substitute counsel which was heard and denied by the trial court on June 16, 2003.  The transcript of that proceeding is not available; however, the record makes clear that the trial court's denial of petitioner's motion did not amount to a Sixth Amendment violation. The record shows that petitioner and trial counsel conferred numerous times during trial and sentencing.  See RT 126, 167, 434, 480, 497.  Petitioner sets forth no evidence to the contrary.  In fact, there is no indication whatsoever that petitioner's relationship with trial counsel was so poisoned as to amount to a

United States District Court
For the Northern District of California

deprivation of petitioner's Sixth Amendment right to effective assistance of counsel.  <u>Schell</u>, 218 F3d at 1024-1025.

Petitioner argues that he was ill-prepared to represent himself during the <u>Marsden</u> motion and that he should have been provided separate counsel to represent him during the motion.  In the context of a motion to substitute counsel, the Ninth Circuit has suggested that separate counsel is warranted only where current counsel fails to assist the defendant in making the motion or takes an adversarial and antagonistic stance regarding the motion. <u>Stenson v Lambert</u>, No 05-99011, 2007 US App LEXIS 22612 at *34 (9th Cir Sept 24, 2007).  It's unclear whether the Ninth Circuit's suggestion derives from clearly established Supreme Court precedent. Regardless, petitioner's claim fails because he does not provide any evidence of an antagonistic and adversarial relationship with trial counsel.

Petitioner is not entitled to federal habeas relief on his claim that the trial court violated his Sixth Amendment rights in denying his <u>Marsden</u> motion.  The California Supreme Court's rejection of the claim was not an objectively unreasonable application of Supreme Court precedent.  See 28 USC § 2254(d).

C

Petitioner claims that his due process rights were violated when he was returned to prison for parole revocation proceedings following his May 11, 2001 arrest, rather than immediately arraigned on criminal charges.  This claim is without merit.

28

**United States District Court**

For the Northern District of California

1    It is well established that pre-accusation delay does not

2    implicate the Sixth Amendment right to a speedy trial.  United

3    States v Marion, 404 US 307, 320 (1971).  Pre-indictment or pre-

4    arrest stage delays are subject to the general requirements of due

5    process, but such delays do not merit relief unless the petitioner

6    can first establish that the delay actually prejudiced his ability

7    to defend himself.  See United States v Gregory, 322 F3d 1157, 1165

8    (9th Cir 2003); United States v Ross, 123 F3d 1181, 1185-86 (9th Cir

9    1997).  If the petitioner can demonstrate actual prejudice, then the

10   court must weigh the prejudice against the length of the delay and

11   the reason for it.  See United States v Bracy, 67 F3d 1421, 1427

12   (9th Cir 1995).

13   Here, the district attorney did not seek criminal charges

14   during petitioner's parole revocation proceedings in May 2001 or

15   upon his re-release.  It was not until petitioner's July 23, 2002

16   arrest on an outstanding parole revocation warrant that the district

17   attorney pursued criminal charges against petitioner, at which point

18   the 2001 charges and the new charges were consolidated.

19   The approximately 14-month "delay" in prosecution does not

20   warrant federal habeas relief because petitioner cannot demonstrate

21   that he suffered any actual prejudice.  At the time of his May 11,

22   2001 arrest, petitioner had engaged in numerous suspected drug

23   sales.  After resisting arrest, he was found to have a pay-and-owe

24   sheet, a large amount of cash and a significant quantity of heroin

25   which was retrieved from his car and his stomach.  He admitted to

26   selling heroin to support his habit and a search of his home

27   revealed additional amounts of heroin as well as live ammunition.

28

United States District Court

For the Northern District of California

The prosecution's case against petitioner was very strong.  Any delay in prosecution was of trivial consequence.  Indeed, as the trial court noted during the severance motion, petitioner likely benefitted from the delay in prosecution, to the extent that the new charges were weaker than the older ones.  Any prejudice in petitioner's inability to obtain witnesses or otherwise defend himself is speculative and remote.  See Ross, 123 F3d at 1185-86 (witness' death before trial not prejudicial because the expected content of his testimony was speculative and cumulative).

Petitioner is not entitled to federal habeas relief on his claim of due process violation for delay in prosecution.  The California Supreme Court's denial of this claim was not an objectively unreasonable application of clearly established Supreme Court precedent.  See 28 USC § 2254(d).

D

Petitioner claims that his conviction was supported by insufficient evidence.  The claim does not warrant federal habeas relief.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence was established beyond a reasonable doubt.  Payne v Borg, 982 F2d 335, 338 (9th Cir 1992).  Rather, the relevant inquiry on review of a constitutional challenge to the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of

30

**United States District Court**

For the Northern District of California

1   the crime beyond a reasonable doubt."   Jackson v Virginia, 443 US

2   307, 319 (1979) (emphasis in original).   The reviewing court "faced

3   with a record of historical facts that supports conflicting

4   inferences must presume - even if it does not affirmatively appear

5   on the record - that the trier of fact resolved any such conflicts

6   in favor of the prosecution, and must defer to that resolution."   Id

7   at 326.

8          Petitioner was convicted of one count of possession of

9   heroin for sale, one count of transportation of heroin and one count

10  of possession of ammunition.   Petitioner contends that there was

11  insufficient evidence that the heroin seized from his home actually

12  belonged to him because he had been in prison for more than 72 hours

13  at the time his house was searched.   A review of the record shows

14  that the direct and circumstantial evidence supporting petitioner's

15  convictions was overwhelming.   The large quantity of heroin seized

16  from petitioner's car and stomach matched the quantity and quality

17  of the heroin seized from his home.   Petitioner was caught with pay-

18  and-owe sheet as well as a large quantity of cash.   A rational juror

19  could have concluded that the bindles of heroin seized from

20  petitioner's home belonged to petitioner and were intended for sale.

21  See Jackson, 443 US at 319.   That a rational juror also could have

22  concluded otherwise is of no consequence - this court must presume

23  that the jury resolved any conflicting inference in favor of the

24  prosecution.   See id at 326.

25         It simply cannot be said that, after viewing the evidence

26  in the light most favorable to the prosecution, no rational trier of

27  fact could have found it beyond a reasonable doubt that petitioner

28

**United States District Court**
For the Northern District of California

1   was guilty of the offenses for which he was convicted.  Id.  The

2   state court's rejection of petitioner's claim was not an objectively

3   unreasonable application of <u>Jackson v Virginia</u>.  See 28 USC §

4   2254(d).  Petitioner is not entitled to federal habeas relief on

5   this claim.

6

7                                   V

8            For the foregoing reasons, the petition for a writ of

9   habeas corpus is DENIED.

10           The clerk shall enter judgment in favor of respondent and

11  close the file.

12

13           IT IS SO ORDERED.

14

15   _____

16   VAUGHN R WALKER
     United States District Chief Judge

17

18

19

20

21

22

23

24

25

26

27

28                              32